B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Gautam Poddar<br><br>Angela Chiang | Muhammad Sayed Hamza-Haris<br><br>Ashley Dawn Haris |

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Jamie Kirk, Hayward & Associates PLLC<br>10501 N. Central Expy., Ste. 106, Dallas, TX 75231<br>(972) 755-7100 | ATTORNEYS (If Known) |
|---|---|

| PARTY (Check One Box Only)<br>☐ Debtor       ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor    ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☒ Debtor       ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Count 1: Nondischargeability of Prepetition Claim pursuant to 11 U.S.C. section 523(a)(2)(A)

Count 2: Nondischargeability of Prepetition Claim pursuant to 11 U.S.C. section 523(a)(4)

Count 3: Nondischargeability of Prepetition Claim pursuant to 11 U.S.C. section 523(a)(6)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ [1] 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ [2] 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ [3] 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $ |

Other Relief Sought

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Muhammad Hamza Haris and Ashley Haris | BANKRUPTCY CASE NO.<br>18-42688 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Eastern District of Texas | DIVISION OFFICE<br>Sherman | NAME OF JUDGE<br>Brenda T. Rhoades |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Jamie Kirk | | |
| DATE<br>March 5, 2019 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Jamie Kirk | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

Melissa S. Hayward
    Texas State Bar No. 24044908
    MHayward@HaywardFirm.com
Jamie Kirk
    Texas State Bar No. 24076485
    JKirk@HaywardFirm.com
HAYWARD & ASSOCIATES PLLC
10501 N. Central Expy., Suite 106
Dallas, Texas 75231
972.755.7100 (phone)
972.755.7110 (facsimile)

ATTORNEYS FOR PLAINTIFFS

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| **In re:** | |
| **MUHAMMAD SAYED HAMZA-HARIS AND ASHLEY DAWN HARIS,** | **Case No. 18-42688-btr** **Chapter 7** |
| **Debtors.** | |
| **GAUTAM PODDAR AND ANGELA CHIANG,** | |
| **Plaintiffs and Creditors,** **v.** | **Adversary No. _____** |
| **MUHAMMAD SAYED HAMZA-HARIS AND ASHLEY DAWN HARIS,** | |
| **Defendants.** | |

## ORIGINAL COMPLAINT TO DETERMINE THE DISCHARGEABILITY OF A DEBT PURSUANT TO 11 U.S.C. § 523

TO HONORABLE BRENDA T. RHOADES, UNITED STATES BANKRUPTCY JUDGE:

COME NOW Gautam Poddar ("Poddar") and Angela Chiang ("Chiang") (collectively, "Creditors" and "Plaintiffs"), creditors and parties-in-interest in the

above-styled and numbered Chapter 7 bankruptcy case, filing this *Original Complaint to Determine the Dischargeability of a Debt under 11 U.S.C. § 523* (the "Complaint") and commencing the above-captioned adversary proceeding (the "Adversary Proceeding") against Muhammad Sayed Hamza Haris ("Hamza") and Ashley Haris ("Haris") (collectively, the "Debtors" or "Defendants"). In support of the Complaint, the Plaintiffs state as follows:

## I.    JURISDICTION AND VENUE

1.    This adversary proceeding arises in the Chapter 7 case of Hamza and Haris, styled and numbered *In re Muhammad Sayed Hamza-Haris and Ashley Haris*, Case No. 18-42688-btr-7 ("Bankruptcy Case"), now pending in the Court.

2.    The Court has jurisdiction over this Bankruptcy Case and the Adversary Proceeding pursuant to Sections 1334 and 157 of Title 28 of the United States Code. The Adversary Proceeding constitutes a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3.    Venue of the Bankruptcy Case and the Adversary Proceeding is appropriate in this Court in the Eastern District of Texas pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    Plaintiffs consent to the Court's entry of final orders or judgment in the Adversary Proceeding.  *See* FED. R. BANKR. P. 7008.

## II.    PARTIES

5.    Gautam Poddar is a creditor of the Debtors' bankruptcy estate (the "Estate").

6.      Angela Chiang is a creditor of the Debtors' Estate.

7.      Defendant Hamza is an individual residing at 15194 Palo Pinto Dr., Frisco, Texas 75035 in Collin County, Texas and is one of the Chapter 7 Debtors in this case. The previous address is the mailing address on file with the Court. Defendant may be served with process in this Adversary Proceeding at that address or at such other place as he may be found.  *See* FED. R. BANKR. P. 7004(b)(9).

8.      Defendant Haris is an individual residing at 15194 Palo Pinto Dr., Frisco, Texas 75035 in Collin County, Texas and is one of the Chapter 7 Debtors in this case. The previous address is the mailing address on file with the Court. Defendant may be served with process in this Adversary Proceeding at that address or at such other place as she may be found.  *See* FED. R. BANKR. P. 7004(b)(9).

### III.    <u>FACTUAL BACKGROUND</u>

9.      On December 3, 2018 (the "<u>Complaint Date</u>", the Debtors filed a voluntary Complaint in this Court under Chapter 7 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), initiating this bankruptcy case.

10.     The Debtors Hamza and Haris live together as a married couple with children.  Together, they operated a business called Kudo Motorsports ("<u>Kudo</u>").  No previous business DBAs or any other business entities were listed as assets or previous identifiers in the Debtors' Schedules that are on file with this Court; neither is any business inventory or business income listed in their Schedules.

11.     In doing business as Kudo, one or both of the Debtors would advertise auto-restorative and various mechanical services online via Craigslist, and Haris

would collect the money from customers while Hamza pretended to complete the services being purchased. Together, they defrauded both Poddar and Chiang on different occasions but with the same modus operandi. It is believed that following the Plaintiffs' filing of the now-abated state court action, Case No. 153-294317-17 in Tarrant County, Texas (the "State Court Lawsuit"). Upon information and belief, shortly after the State Court Lawsuit was filed, the Debtors stopped conducting business under Kudo Motorsports and now operates under I G W T 786, Inc. ("IGWT") in Carrollton, Texas. Shortly before the trial date setting in the State Court Lawsuit, the Debtors filed for Chapter 7 bankruptcy relief.

12.     The basis of the State Court Lawsuit and the basis for this Adversary Proceeding is that the Debtors entered into contracts with Creditors to fix damaged vehicles owned by the Creditors, but never repaired the vehicles. The Debtors repeatedly defrauded Creditors by stating more and more money was needed to complete the repairs the Debtors claimed to be completing. It turned out none of the repairs were completed at all, yet Ashley Haris continued to collect the funds via her Venmo and Square Cash app (the "Money Transfers").

13.     Hamza represented that he was a qualified mechanic, even being certified to issue vehicle inspections in Dallas. Hamza represented that he worked for Mercedes and Audi Dallas before beginning to do business as Kudo Motorsports.

14.     On or about October 7, 2016, Poddar was in a car accident which caused extensive damage to his 2004 Audi S4. Poddar told Hamza what happened, and Hamza convinced him that it would be better to get the value of the car and

keep the car despite the insurance company finding the vehicle a total loss.  Hamza insisted that he be the one to handle everything with the insurance company. Poddar trusted Hamza's expertise and followed his advice and even allowed him to be the contact person for the insurance company.  The day after the accident, Hamza and Haris purchased a "work sheet" or "build sheet" from the body shop; Hamza stated this was suggested by the adjuster.

15.   Hamza claimed to have multiple phone conversations with adjusters at State Farm regarding Poddar's damaged vehicle.  Eventually, State Farm offered Poddar $10,700 for his vehicle at a total loss calculation wherein Poddar would retain his vehicle.  Hamza told Poddar to have the car towed away from the shop that provided the work sheet and that he, Hamza, would work on it himself.  On October 24, 2016, Poddar accepted the offer from State Farm and agreed to let Debtors fix the car with the money received from the insurance company.  On this same date, Hamza told Poddar that he believed they could get a supplemental check from the insurance company in order to help with the repair process.  On October 26th, Poddar explained to Hamza that he did not want to put too much money into the repair of the vehicle; Poddar did this in order to lower Hamza's expectations for how much work to put into the car.  On October 28th, Hamza stated he will have the car fixed within a week.  Throughout the days following, Poddar and the Debtors, mainly Hamza, discussed the repairs, cost of parts, and the timeline for the repairs to be completed in early November.

16.   Once the Debtors began work on the vehicle, it became apparent the

cost of repairs would greatly surpass the money received from State Farm, but Hamza assured Poddar that he would successfully open up a supplement request with State Farm and receive a supplemental check. Throughout the following months, Hamza continued to ask Plaintiff for money for parts and claim that he is and has been in contact with State Farm regarding the supplement. Months went by with the Debtors constantly asking for more money yet refusing to let Poddar see his vehicle. Finally, Poddar contacted State Farm only to be told that no supplements were ever filed on his case and the claim had already been closed. When Poddar confronted the Debtors about the situation and demanded to see the car or retrieve the car from Debtors, Hamza became hostile and refused to speak to Poddar or his father. Poddar was told to speak with Debtors'/Kudo Motorsports' representative Omar Chaudhry. Debtors and their agent threatened Poddar and his family in order to halt his demands and then dumped the inoperable vehicle on a street corner at 15200 Spectrum, Addison, Texas – which happened to be close to the Debtors' former residence of 5060 Addison Circle.

17.     As a result of the Debtors' fraudulent actions, Poddar has incurred $61,342.93 in damages just from the Money Transfers alone. Poddar hired expert witness Bernard A. Siegal, ASA to inspect the vehicle. Mr. Siegal determined no repairs had been done to the car at all, and – in fact – the car was worse than at the time of the accident.

18.     In the almost exact set of facts as Poddar, Chiang contacted Debtors on January 1, 2017 regarding damage to her 2015 VW Golf GTI SE. Her insurance

adjuster determined the vehicle would need a fender replacement, bumper paint, and a pin stripe.  On January 16th, Chiang met Hamza so he could look over the car and determine if he could perform the services she requires.  Hamza claimed he could start the work, but Chiang would need to provide the money to begin the prep work and for an appraisal.

19.    Chiang entered into a contract with Debtors to fix her damaged vehicle. The Debtors repeatedly defrauded Chiang by stating more and more money was needed to complete the repairs the Debtors claimed to be completing.  It turned out none of the repairs were completed at all, yet Haris continued to collect the Money Transfers via her Venmo and Square Cash app.

## IV.    CAUSES OF ACTION

### COUNT 1: NONDISCHARGEABILITY OF PREPETITION CLAIM PURSUANT TO 11 U.S.C. § 523(a)(2)(A)

20.    In connection with the Contracts and Money Transfers, Debtors knowingly made false pretenses, false representations, or actual fraud regarding their intended use of the Money Transfers and their intended actions providing service and repairs to the Plaintiffs' vehicles.

21.    If Debtors had been truthful in their representations to Plaintiffs regarding repair services, then Plaintiffs would never have retained and paid Debtors.

22.    Debtors knew at all times that the statements made to Plaintiffs regarding their services would induce Plaintiffs to enter the Contracts and extend

the Money Transfers, and those statements were made with the intent for Plaintiffs

to rely on them in considering to retain Debtors.

23.    Debtors' misrepresentations did induce Plaintiffs to make the

Contracts and extend the Money Transfers and, as a result of such

misrepresentations, Plaintiffs have been damaged in the amount of no less than

$66,000.00, exclusive of costs and fees under the Contracts.

24.    Accordingly, Plaintiffs have performed all conditions precedent.

25.    Plaintiffs request that this Court enter an order denying the discharge

of Plaintiffs Claims pursuant to section 523(a)(2)(A) of the Bankruptcy Code and tax

the attorney's fees and costs relating to the prosecution of this matter against

Debtors.

### COUNT 2: NONDISCHARGEABILITY OF PREPETITION CLAIM PURSUANT TO 11 U.S.C. § 523(A)(4)

26.    Plaintiffs hereby incorporate the foregoing paragraphs as if they were

set forth fully herein.

27.    Plaintiffs' Claims arose from Debtors' misuse of Plaintiffs' property

and money—namely, the Money Transfers paid to the Debtors pursuant to the

Contracts.

28.    Defendant engaged in the fraudulent and wrongful taking and

carrying away of the Money Transfers with the intent to convert Plaintiffs' property

for Debtors' personal use and with the intent to permanently deprive Plaintiffs of

their property.

29.     As set forth with more particularity above, Debtors—without the knowledge, consent, or approval of Plaintiffs—fraudulently obtained the bailment of Plaintiffs' vehicles and the Money Transfers for a use *other than* the agreed and stated repair of Plaintiffs' vehicles.

30.     Defendant purposefully, intentionally, and fraudulently created, and entered into the Contracts so Debtors could—and did—induce Plaintiffs into extending the Money Transfers based on the intended purpose and statements made by Debtors.

31.     However, Debtors instead intentionally and knowingly used the Money Transfers for their personal benefit and *not* for the benefit of the Plaintiffs.

32.     Debtors misused the money transferred for repairs to the Plaintiffs' vehicles and failed to provide the repairs and service they had agreed to, upon information and belief including, but not limited to, the starting of a "new" business entity, IGWT, to step into the shoes of their previous business, Kudo Motorsports.

33.     As a result, Plaintiffs have been damaged in excess of $66,000.00, exclusive of costs and fees under the Contracts.

34.     Plaintiffs request that this Court enter an order denying the discharge and exempting their Claims from discharge pursuant to section 523(a)(4) of the Bankruptcy Code.

## COUNT 3: NONDISCHARGEABILITY OF PREPETITION CLAIM PURSUANT TO 11 U.S.C. § 523(A)(6)

35.     Plaintiffs hereby incorporate the foregoing paragraphs as if they were

set forth fully herein.

36.     Plaintiffs' Claims arose from a willful and malicious injury to Plaintiffs and their property caused by the acts or omissions of Debtors in connection with receiving the Money Transfers and bailment of Plaintiffs' vehicles.

37.     Debtors intended for the Plaintiffs and their property suffer the injury caused by the acts of omissions of Defendant in obtaining the Contracts and Money Transfers.

38.     The representations were made with the willful and malicious intent to induce Plaintiffs to hire Debtors and transfer the funds in exchange for their services.

39.     There was an objective, substantial certainty of harm to Plaintiffs and their property because of Debtors' acts or omissions and false statements regarding the intended use of the Money.

40.     Alternatively, Debtors had subjective motive to cause harm to Plaintiffs and their property through Debtors' acts or omissions in obtaining the Contracts and Money Transfers

41.     As set forth with more particularity above, Debtors intentionally, willfully, wantonly, recklessly, and negligently misrepresented material facts to, and suppressed information from, Plaintiffs to induce them to make the Contracts and Money Transfers.

42.     Debtors made these misrepresentations of material fact to Plaintiffs with the knowledge that they were false, or with reckless disregard for whether or

not such material facts were true.

43.     These misrepresentations of material fact were made by Debtors with the intent to deceive Plaintiffs, and knowledge that it would induce Plaintiffs to finalize the Contracts and the Money Transfers.

44.     The representations, acts, and omissions did induce Plaintiffs to finalize the Contracts and the Money Transfers.

45.     As a result of Debtors' acts and omissions, Plaintiffs suffered the damages represented by their Claims made in the Bankruptcy Case in excess of $66,000.00, exclusive of costs and fees under the Contracts.

46.     Plaintiffs request this Court enter an order denying the discharge of Plaintiffs' Claim pursuant to Section 523(a)(6) of the Bankruptcy Code, and tax the attorney's fees and costs relating to the prosecution of this matter against Debtors.

## COUNT 4: COMMON LAW FRAUD

47.     Plaintiffs incorporate by reference herein the allegations contained in the foregoing paragraphs.

48.     Debtors concealed or failed to disclose certain material facts they had a duty to disclose to Plaintiffs, including the fact that Debtors were using money belonging to Debtor to pay for expenses other than the repairs on Debtors' vehicles as agreed.

49.     Debtors were deliberately silent when they had a duty to speak, and Plaintiffs relied upon Debtors' nondisclosure.  By failing to disclose these and other facts, Debtors intended to induce Plaintiffs to view the Debtor as insolvent and with

only liabilities outstanding. The Debtors did this so they could continue their scheme to defraud the Debtor, and the Debtor has been injured as a result.

50.     Defendant Rivas formed the Debtor and continued for years to run as an entity shell with no actual revenue, accounting, overhead, or income for management fees.

51.     Accordingly, Plaintiffs seeks damages within the jurisdictional limits of this Court, including actual damages and exemplary damages.

## COUNT 5: ACCOUNTING

52.     Plaintiffs incorporate by reference herein the allegations contained in the foregoing paragraphs.

53.     Plaintiffs are entitled to an accounting for each of the Money Transfers under TEX. BUS. ORGS. CODE § 152.211(b).

## COUNT 6: DECEPTIVE TRADE PRACTICES

54.     Plaintiffs hereby incorporate by reference all other paragraphs in this Complaint.

55.     Plaintiffs would show that all Debtors engaged in certain false, misleading and deceptive acts, practices, and omissions actionable under the Texas Deceptive Trade Practices - Consumer Protection Act (Texas Business and Commerce Code, Chapter 17.41, et seq.), as alleged herein below.

56.     Unconscionable Action or Course of Action. Debtors engaged in an "unconscionable action or course of action" to the detriment of Plaintiff as that term is defined by Section 17.45(5) of the Texas Business and Commerce Code, by taking

advantage of the lack of knowledge, ability, experience, or capacity of Plaintiff to a grossly unfair degree.

57.   <u>Violations of Section 17.46 (b).</u> Debtors violated Section 17.46(b) of the Texas Business and Commerce Code, in that Debtors:

(a) caused confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(b) caused confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;

(c) represented that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(d) represented that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

(e) knowingly made false or misleading statements of fact concerning the need for parts, replacement, or repair service;

(f) represented that a guaranty or warranty confers or involves rights or remedies which it does not have or involve;

(g) represented that work or services have been performed on, or parts replaced in, goods when the work or services were not performed or the parts replaced;

(h) failed to disclose information concerning goods or services which was known at the time of the transaction with the intention to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed; and

(i) made false or misleading statements of fact concerning the reasons for, existence of, or amount of price reductions.

58.   <u>Producing Cause.</u> Plaintiffs would show that the acts, practices, and omissions complained of were the producing cause of Plaintiffs' damages more fully described hereinbelow.

59.   <u>Reliance.</u> Plaintiffs would further show the acts, practices, and

omissions complained of under Section 17.46(b) of the Texas Business and Commerce Code were relied upon by Plaintiffs to Plaintiff's detriment.

60.     Written Notice Given. Plaintiffs have timely notified Debtors of such complaint pursuant to Section 17.505(a) of the Texas Business and Commerce Code by letters dated June 14, 2017 and June 29, 2017, and would show compliance with all conditions precedent to the filing of this suit and recovery of additional damages and attorney's fees.

## COUNT 7: BREACH OF CONTRACT

61.     Plaintiffs hereby incorporate by reference all other paragraphs in this Complaint.

62.     Plaintiffs would further show that the actions, and omissions of Debtors described hereinabove constitute breach of contract, which proximately caused the direct and consequential damages of Plaintiffs described hereinbelow, and for which Plaintiffs hereby sue.

## COUNT 8: WIRE FRAUD

63.     Plaintiffs hereby incorporate by reference all other paragraphs in this Complaint.

64.     Plaintiffs would show Debtors committed wire fraud under 18 U.S.C. § 1343 with the false advertising of the services, nature of the ownership of the business, and location of the business in order to advance a scheme to defraud. This scheme to defraud included false invoices and requests for payment via Venmo and Square Cash apps.

## COUNT 9: EXTORTION

65.     Plaintiffs hereby incorporate by reference all other paragraphs in this
Complaint.

66.     Plaintiff Poddar would show Defendant Hamza Haris violated the
Hobbs Act by the obtaining of property from another, with his consent, induced by
wrongful use of actual or threatened force, violence, or fear, or under color of official
right, as set forth in 18 U.S.C. §1951.

## COUNT 10: CIVIL RICO

67.     Plaintiffs hereby incorporate by reference all other paragraphs in this
Complaint.

*68.*     Plaintiffs would show Debtors engaged in an enterprise, with criminal
intent, which affected interstate commerce. All the Debtors herein sued were
associated with the enterprise and engaged in a pattern of racketeering activity
through their conduct and the conduct of the enterprise. Debtors predicate acts
include wire fraud and extortion. As such, Plaintiffs are entitled to a judgment
pursuant to 18 U.S.C. § 1961, *et seq.*

69.     As a direct and proximate result of the Debtors' pattern of
racketeering, the Plaintiffs suffered immediate damages in the amount of over
$55,000.

70.     Due to the malicious, intentional, fraudulent, and reckless behavior of
the Debtors, Plaintiffs are entitled to punitive damages in the form of treble
damages and attorney's fees as a result of Debtors' conduct.

## COUNT 11: ECONOMIC AND ACTUAL DAMAGES

71.   Plaintiffs hereby incorporate by reference all other paragraphs in this Complaint.

72.   Plaintiffs sustained the following economic and actual damages as a result of the actions and omissions of Debtors described hereinabove:

> (a) Out-of-pocket expenses, including but not limited to fifty-five thousand dollars for parts, paint, and labor.
>
> (b) Loss of use.
>
> (c) Cost of replacement.
>
> (d) Loss of credit and damage to credit reputation.
>
> (e) Any interest or finance charges assessed and paid;
>
> (f) Costs of repairs.
>
> (g) Remedial costs and costs of completion.

## COUNT 12: DAMAGES FOR MENTAL ANGUISH

73.   Plaintiffs hereby incorporate by reference all other paragraphs in this Complaint.

74.   Plaintiffs would further show that the false, misleading and deceptive acts, practices, and omissions described hereinabove were committed "knowingly," as provided by Section 17.45(9) of the Texas Business and Commerce Code, in that Debtors had actual awareness of the falsity, deception, or unfairness of such acts, practices, and omissions.

75.   As a result of such acts, practices, and omissions, Plaintiffs sustained a high degree of mental pain and distress of such nature, duration and severity that would permit the recovery of damages for mental anguish pursuant to Section

17.50(b) of the Texas Business and Commerce Code, and for which Plaintiffs sue.

## COUNT 13: MULTIPLE DAMAGES

76.     Plaintiffs hereby incorporate by reference all other paragraphs in this Complaint.

77.     As alleged hereinabove, Plaintiffs would show that the false, misleading and deceptive acts, practices, and omissions complained of herein were committed "knowingly" in that Debtors had actual awareness of the falsity, deception, or unfairness of such acts, practices, and omissions.

78.     Plaintiffs further aver that such acts, practices, and omissions were committed "intentionally" in that Debtors specifically intended that Plaintiffs act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness.

79.     Therefore, Plaintiffs are entitled to recover multiple damages as provided by l 7.50(b)(l) of the Texas Business and Commerce Code and as provided under 18 U.S.C. § 1961, et seq.

## COUNT 14: EXEMPLARY DAMAGES

80.     Plaintiffs hereby incorporate by reference all other paragraphs in this Complaint.

81.     Plaintiffs would further show that the acts and omissions of Debtors complained of herein were committed knowingly, willfully, intentionally, with actual awareness, and with the specific and predetermined intention of enriching said Debtors at the expense of Plaintiffs. In order to punish said Debtors for such

unconscionable overreaching and to deter such actions and omissions in the future, Plaintiffs also seek recovery from Debtors for exemplary damages as provided by Section 41.003(a)(l) of the Texas Civil Practice and Remedies Code.

### COUNT 15: ATTORNEYS' FEES

82.     Plaintiffs hereby incorporate by reference all other paragraphs in this Complaint.

83.     Request is made for all costs and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiffs herein, including all fees necessary in the event of an appeal of this cause as the Court deems equitable and just, as provided by: (a) Section 17.50(d) of the Texas Business and Commerce Code; (b) Chapter 38 of the Texas Civil Practice and Remedies Code; and, (c) common law.

## V.     PRAYER

WHEREFORE, BASED UPON THE FOREGOING, Plaintiffs respectfully request that the Court issue citation for Debtors to appear and answer this Complaint, and that upon a trial of this Complaint, Plaintiffs be awarded a judgment against Debtors for the following:

(i)     A determination that the Claim is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A);

(ii)    A determination that the Claim is not dischargeable pursuant to 11 U.S.C. § 523(a)(4);

(iii)   A determination that the Claim is not dischargeable pursuant to 11 U.S.C. § 523(a)(6);

(iv)    A determination that the Plaintiffs are successful on all counts, including those listed above;

(v)     Plaintiffs' reasonable attorneys' fees and costs incurred herein;

(vi)    Prejudgment interest;

(vii)   Post-judgment interest; and

(viii)  Such additional and further relief which the Court deems just and proper and to which Plaintiffs may show themselves to be justly entitled.

**DATED:** March 5, 2019

Respectfully submitted,

 */s/ Jamie Kirk*
Jamie Kirk
   Texas State Bar No. 24076485
   JKirk@HaywardFirm.com
Melissa S. Hayward
   Texas State Bar No. 24044908
   MHayward@HaywardFirm.com
HAYWARD & ASSOCIATES PLLC
10501 N. Central Expy., Suite 106
Dallas, Texas 75231
972.755.7100 (phone)
972.755.7110 (facsimile)

**ATTORNEYS FOR PLAINTIFFS**