IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION



**EOD**

09/17/2021

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **MUHAMMAD S. HAMZA-HARIS** | § | |
| **and ASHLEY DAWN HARIS** | § | Case No. 18-42688 |
| | § | |
| | § | |
| | § | Chapter 7 |

| | | |
|---|---|---|
| GAUTAM PODDAR | § | |
| | § | |
| | § | |
| Plaintiff | § | |
| v. | § | Adversary No. 19-4031 |
| | § | |
| MUHAMMAD S. HAMZA-HARIS | § | |
| and ASHLEY DAWN HARIS | § | |
| | § | |
| Defendants | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court held a trial on the above-entitled adversary proceeding on May 18,

2021.  Mr. Gautam Poddar (the "Plaintiff") seeks a determination of whether an alleged

debt owed to him by Mr. Muhammad Sayed Hamza-Haris and Mrs. Ashley Dawn Haris

(the "Defendants" or "Debtors") should be excepted from discharge.  In the "First

Amended Complaint to Determine the Dischargeability of a Debt Pursuant to 11 U.S.C. §

523" (the "First Amended Complaint"), Plaintiff contends that the debt allegedly owed to

him by Defendants is nondischargeable under the exceptions set forth in 11 U.S.C. §§§

523(a)(2)(A), (a)(4), and/or (a)(6).  After trial, the Court took the matter under

advisement.  On that determination, the Court issues the following findings of fact and

conclusions of law.  This memorandum disposes of all issues pending before the Court.

## I. FINDINGS OF FACT[1]

On December 3, 2018, Defendants initiated the main bankruptcy case associated

with this adversary proceeding (the "Case) by filing their voluntary petition for Chapter 7

relief under Title 11 of the United States Code (the "Bankruptcy Code").[2]  Defendants

filed their original schedules in the Case on December 28, 2018.[3]  Plaintiff was not

scheduled as a creditor by Debtors.[4]  The Case was closed without a discharge, but was

later reopened and a discharge order was entered on June 26, 2020.[5]

Plaintiff timely filed his Original Complaint on September 24, 2019, seeking to

except his alleged claim from the scope of the discharge granted to Defendants as a debt

procured by false representation, false pretenses, or actual fraud under 11 U.S.C. §

523(a)(2)(A), a debt for embezzlement or larceny under 11 U.S.C. § 523(a)(4), and/or a

debt arising from willful and malicious injury by the Debtors to another entity or to the

---

[1] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable to adversary proceedings by Fed. R. Bankr. P. 7052, which is pertinent to this proceeding pursuant to Fed. R. Bankr. P. 9014.  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.

[2] Dkt. #1 in the Case.

[3] Dkt. #16 in the Case; *see also* Plaintiff's Trial Witness and Exhibit List, Ex. 40.  Unless otherwise noted, all citations to exhibits from Plaintiff reflect the exhibits numbered and included in the Plaintiff's Trial Witness and Exhibit List.

[4] Dkt. #16 in the Case.

[5] Dkt. ### 41, 50, and 52 in the Case.

property of another entity.[6]  Defendant first answered on April 24, 2019 (the "Answer"),

and later filed an amended answer on June 7, 2019 (the "First Amended Answer").[7]  On

May 7, 2019, Plaintiff filed his First Amended Complaint with his former co-plaintiff,

Angela Chiang.[8]  The Court terminated Ms. Chiang as a co-plaintiff in this adversary

proceeding on October 8, 2019.[9]  In the "Scheduling Order Arising from the [sic] Initial

Management Conference" (the "Scheduling Order"), the Court set the discovery deadline

for February 28, 2020.[10]  The parties completed discovery and Plaintiff timely filed his

Motion for Summary Judgment (the "Motion") on June 1, 2020, which the Court denied

on June 29, 2020.[11]

On June 29, 2020, the Court entered a "Notice and Order Regarding Final

Pre-Trial Procedures in Adversary Proceeding" requesting input from the parties on

scheduling a trial in this case.[12]  Only Plaintiff responded.[13]  The Court thereafter entered

---

[6] Original Complaint to Determine the Dischargeability of a Debt Pursuant to 11 U.S.C. § 523, ECF No. 1.

[7] Defendants' Original Answer and Partial Motion to Dismiss, ECF No. 8; Defendants' Amended Answer, ECF No. 17.

[8] First Amended Complaint, ECF No. 13.

[9] Sua Sponte Order Granting Severance of Adversary Proceeding at 2, ECF No. 24.

[10] Scheduling Order, ECF No. 23.

[11] Plaintiff's Motion for Summary Judgment, ECF No. 38.

[12] Notice and Order Regarding Final Pre-Trial Procedures, ECF No. 43.

[13] Response Regarding Final Pretrial Procedures, ECF No. 46.

its Final Scheduling Order on August 10, 2020.[14]  Due to the ongoing Covid-19

pandemic, the trial was later rescheduled for and conducted on May 18, 2021.[15]  Because

Defendants became *pro se* after the withdrawal of their counsel, prior to trial the Court

attempted on multiple occasions to confirm their appearance at trial.  Nonetheless,

Defendants did not appear at trial, and as a result, the Court considered only their

pleadings, previously filed exhibits, and relevant legal authorities in opposition to the

evidence and testimony presented at trial by the Plaintiff.

Plaintiff and Mr. Hamza-Haris became acquainted through an online forum

for "Audi car enthusiasts."[16]  They established a relationship through which Mr. Hamza-

Haris completed vehicle repairs and modifications for Plaintiff.[17]

On October 7, 2016, the Plaintiff was in a car accident (the "Accident") involving

his 2004 Audi S4 (the "Car").[18]  His insurance company, State Farm, found the vehicle to

be a total loss and reimbursed Plaintiff for $10,730.46.[19]  Plaintiff retained the vehicle in

order to repair the damage caused by the Accident, and to make modifications to enhance

---

[14] Final Scheduling Order for Trial in Tyler, Texas Pursuant to COVID-19 Safety Protocols, ECF No. 47.

[15] Order Continuing Trial of Adversary Proceeding and Related Deadlines, ECF No. 50.

[16] Appendix in Support of Defendants' Response to Plaintiff's Motion for Summary Judgment, Declaration Muhammad Sayed Hamza Haris, Ex. 1, 1 ¶ 3, ECF No. 41-1; *see cf.* Plaintiff's Testimony at 16:24.

[17] *See* Pl.'s Ex. 8; *see also* Pl.'s Ex. 9; *see also* Pl.'s Ex. 11.

[18] Pl.'s Ex. 12.

[19] Pl.'s Ex. 10.

the car's value for a potential resale.[20]

On the day of the Accident, Plaintiff texted Mr. Hamza-Haris, informing him of the damage to the Car.[21]  Mr. Hamza-Haris advised Plaintiff not to "mess" with the Car, and that he would either help repair it or strip it down to sell the parts.[22]  On October 24, 2016, after some communication concerning the Car and other potential business dealings, Mr. Hamza-Haris told the Plaintiff that "we need to file a supplement" once Plaintiff received his insurance check.[23]  On October 28, 2016, Plaintiff and Mr. Hamza-Haris further discussed repairing the Car, and Mr. Hamza-Haris informed the Plaintiff he intended "on having the whole car ready in less than a week."[24]  The Plaintiff expressed his surprise at this purported timeline, explaining that he expected the work to take "like a month," and that he was "not in a hurry."[25]  Approximately two and a half months later on January 14, 2017, Mr. Hamza-Haris indicated his displeasure concerning the situation with the Car, calling it a "headache" for which he had already "done so much work."[26]

There is a gap in the messages produced by the Plaintiff from April 2017 until May

---

[20] *See* Pl.'s Ex. 15; *see also* Pl.'s Ex. 18.

[21] Pl.'s Ex. 12.

[22] *Id.*

[23] Pl.'s Ex. 9.

[24] Pl.'s Ex. 22.

[25] *Id.*

[26] Pl.'s Ex. 27.

24, 2017.[27]  On May 29, 2017, Mr. Hamza-Haris met with the Plaintiff and his father.[28]  It is unclear from the evidence provided what occurred that spurred the next message on May 31, 2017, but Mr. Hamza-Haris ultimately indicated that he was prepared to file charges for harassment against the Plaintiff and/or his father, and that he was "blocking" the Plaintiff's number as "advised by [his] legal team."[29]

Plaintiff did not provide any text messages or evidence of direct communication between himself and Ms. Haris, and testified that he "never really dealt with her [Ms. Haris]."[30]

Plaintiff contends in the First Amended Complaint that he is entitled to $61, 342.93 from direct transfers he made to the Defendants on Venmo and the Cash App.[31] The evidence submitted by the Plaintiff simply does not support this number.  The *gross* total, which includes all direct transfers from the Plaintiff to Ms. Haris's account on either app, is $57,843.90.  This number does not account for transfers made by the Plaintiff to Ms. Haris prior to the Accident, transfers made from Ms. Haris to the Plaintiff, and other

---

[27] It appears to the Court that during this time period there were text messages not produced by Plaintiff, making the context of some of the communication unclear.

[28] Pl.'s Ex. 25.

[29] *Id*.

[30] Pl.'s Test. at 23:45.

[31] Pl.'s Ex. 34 (First Am. Compl.), 6 ¶ 17.  In subsequent filings, Plaintiff inexplicably contends he is owed $72,782.53 based on the same direct transfers.  *But see* Pl.'s Ex. 31 (Summ. of Damages); *see also* Pl.'s Ex. 36 (Brief in Support of Pl.'s Mot. Summ. J.), 9 ¶ 24.

transfers clearly intended for unrelated expenses.[32]  When accounting for these transfers, the *net* total is $44,152.48.

Notwithstanding the unrelated direct transfers, there are many transfers made by Plaintiff to Ms. Haris clearly related to car parts, repairs, or modifications, but it is unclear if they are directly related to the Car based on the evidence produced by Plaintiff.

The transfers clearly indicating expenses related to the Car post-Accident equal $30,430.22.[33]  The remaining payments concerning car parts, repairs, or modifications not explicitly related to the Car equal $13,722.26.[34]  This difference is significant because the payment history and pleadings evince an ongoing business relationship between the Plaintiff and Mr. Hamza-Haris.[35]  Such payments exhibit that many transfers relating to cars are irrelevant to this proceeding.  Therefore the debt owed by Defendants to Plaintiff in relation to the Car totals $30,430.22 (the "Car Debt.")**.**

## II. ANALYSIS AND CONCLUSIONS OF LAW

The Court has jurisdiction to consider the adversary complaint in this proceeding

---

[32] *See* Pl.'s Ex. 32.  Examples of such transfers include the following: (1) Sep. 18, 2016 transfer from Mr. Poddar to Ms. Haris for $499.00; (2) Oct. 12, 2016 transfer from Mr. Poddar to Ms. Haris for $40.00 for a Toyota Corrolla; (3) Oct. 18, 2016 transfer from Mr. Poddar to Ms. Haris for $217.00 for a "tune for a new customer for Hamza."

[33] *Id.*

[34] *Id.*

[35] *See* Pl.'s Ex. 32.  Examples of such transfers include the following: (1) Dec. 24, 2016 transfer from Mr. Poddar to Ms. Haris for $450.00 for "smoke shop stuff;" (2) Jan. 13, 2017 transfer from Mr. Poddar to Ms. Haris for $243.00 for "Audi A4 (Jake)"; (3) Jan. 30, 2017 transfer from Mr. Poddar to Ms. Harris for $200.00 for "turbo profit."

pursuant to 28 U.S.C. §§ 1334 and 157. This Court has the authority to enter final

judgment on all issues raised in this adversary proceeding because it constitutes a core

proceeding under 28 U.S.C. § 157(b)(2)(A), (I), and (J), and meets all constitutional

standards for the proper exercise of full judicial power by this Court.

Plaintiff alleges that the Car Debt should be excepted from discharge pursuant to

11 U.S.C. §§§ 523(a)(2)(A), (a)(4), and/or (a)(6).[36] When a plaintiff seeks to except a

debt from a discharge granted to a debtor, the plaintiff must prove their claims by a

preponderance of evidence. *Grogan v. Garner*, 498 U.S. 279, 286 (1991). All exceptions

to discharge under 11 U.S.C. § 523 "must be strictly construed against a creditor and

liberally construed in favor of a debtor so that the debtor may be afforded a fresh start."

*Hudson v. Raggio (Matter of Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997). The Fifth

Circuit, however, has ruled that there are limitations to this assumption, particularly in

reference to the exceptions under 11 U.S.C. § 523 in which the debtor has allegedly

committed fraud. *Tummel v. Quinlivan (In re Quinlivan)*, 434 F.3d 314, 318-319 (5th

Cir. 2005). Consequently, courts must balance a debtor's "fresh start" against protecting

---

[36] In the Original Complaint and several subsequent filings such as the "Proposed Findings of Fact and Conclusions of Law," Plaintiff contends that he is entitled to damages under breach of contract and several state law claims. Pl.'s Ex. 36, 11-13 ¶¶ 32-45; Plaintiff's Proposed Findings of Fact and Conclusions of Law, 9 ¶¶ 61-68. "An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). In the First Amended Complaint, Plaintiff removed the breach of contract and other state law causes of action, only including those under 11 U.S.C. §§§ 523(a)(2)(A), (a)(4), and (a)(6). *See* Pl.'s Ex. 34. Plaintiff neither adopted nor incorporated "by reference the earlier pleading." *King*, 31 F.3d at 346. Thus, claims not explicitly listed in the First Amended Complaint are moot.

the victims of fraud.  The Court will discuss each dischargeability exception claim in turn.

*Nondischargeability Under 11 U.S.C. § 523(a)(2)(A)*

Plaintiff contends that the Car Debt should be excepted from discharge under 11

U.S.C. § 523(a)(2)(A) as a debt obtained by false pretenses, false representation, or actual

fraud.  Plaintiff alleges that Defendants "knowingly made false pretenses, false

representations, or actual fraud regarding their intended use of the Money Transfers and

their intended actions providing service and repairs to the Plaintiff's vehicles."[37]  The

Bankruptcy Code states:

> "A discharge under § 727 of this title does not discharge an individual debtor from
> any debt for money, property or services...to the extent obtained by false pretenses,
> false representation, or actual fraud, other than a statement respecting the debtor's
> or an insider's financial conditions."

11 U.S.C. § 523(a)(2)(A).  This subsection encompasses similar yet distinct causes of

action.  The Fifth Circuit has distinguished the elements of "actual fraud" and "false

pretenses and false representations."  *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1291

(5th Cir. 1995), *overruled on other grounds as recognized by Husky v. Ritz (Matter of*

*Ritz)*, 832 F.3d 560, 565 n.3 (5th Cir. 2016).  Thus, the Court will analyze them

separately.

To obtain a judgment of nondischargeability for false representation or false

pretenses, a creditor must demonstrate that a debtor made (1) knowing and fraudulent

falsehoods; (2) describing past or current facts; (3) that were relied upon by the other

---

[37] Pl.'s Ex. 34 (First Am. Compl.), 7 ¶ 20.

party.  *Wright v. Minardi (In re Minardi)*, 536 B.R. 171, 187 (Bankr. E.D. Tex. 2015)

(citing *Allison v. Roberts (Matter of Allison)*, 960 F.2d 481, 483 (5th Cir. 1992)).  False

pretenses and false representations "both involve intentional conduct intended to create or

foster a false impression."  *FNFS, Ltd. v. Harwood (In re Harwood)*, 404 B.R. 366, 389

(Bankr. E.D. Tex. 2009).  A false representation, however, "involves an express

statement, while a claim of false pretenses may be premised on misleading conduct

without an explicit statement."  *Id*.

Plaintiff produced evidence showing that Mr. Hamza-Haris represented he would

repair the Car,[38] and photographic evidence exhibiting that such repairs had not been

made when he regained possession of the Car.[39]  Plaintiff also produced evidence of

direct transfers between himself and Defendant Ashley Haris, some of which indicate a

representation that Mr. Hamza-Haris was completing repairs in exchange for payment.[40]

Plaintiff, however, fails to prove that he justifiably relied upon such representations by a

preponderance of the evidence.

The applicable standard of reliance under 11 U.S.C. § 523(a)(2)(A) is justifiable

reliance.  *Field v. Mans*, 516 U.S. 59, 70-71 (1995); *Wright*, 536 B.R. at 187.  While

justifiable reliance does not require a plaintiff to demonstrate reasonableness, one "cannot

recover if he blindly relies upon a misrepresentation the falsity of which would be patent

---

[38] Pl.'s Ex. 22.

[39] Pl.'s Ex. 2.

[40] *See* Pl.'s Ex. 32.

to him if he had utilized his opportunity to make a cursory examination or investigation."

*Field*, 516 U.S. at 71 (quoting Restatement (Second) of Torts, § 541 cmt. a (Am. Law

Inst. 1976)).  This is true in cases where "the facts should be apparent to the plaintiff

based on their knowledge and intelligence from a cursory glance."  *Field*, 516 U.S. at 71

(quoting WILLIAM L. PROSSER, LAW OF TORTS 718 (4TH ED. 1971)).  Justifiable reliance is

focused on "the qualities and characteristics of the particular plaintiff, and the

circumstances of the particular case, rather than of the application of a community

standard of conduct in all cases."  *Id*. at 70–71.

While it is understandable that Plaintiff afforded Mr. Hamza-Haris leeway based

on their prior relationship, as a "car enthusiast" he should have quickly realized that the

amount of money he was sending to Defendants was abnormal or excessive.[41]  In fact,

Plaintiff testified at trial to multiple instances where he realized he should have stopped

sending money to Defendants, stating that he "could have brought a brand new Audi"

with the money.[42]  Furthermore, the amount he continued to transfer to Defendants should

have raised "red flags" for a reasonable person without knowledge or an interest in cars,

and should have raised concerns even faster for an individual with a heightened interest in

cars like Plaintiff.[43]  *Cohen v. Third Coast Bank*, Civ. A. No. 1:13-CV-610, 2014 WL

---

[41] App. in Support of Defs.' Resp. to Pl.'s Mot. Summ. J., Ex. 1, Decl. of Muhammad Sayed Hamza Haris, 1 ¶ 3, ECF No. 41-1.

[42] Pl.'s Test. at 35:05.

[43] *See* Pl.'s Test. at 16:24 ("make sure he doesn't do this to other auto enthusiasts"); *see also id*. at 16:30 (describing himself as "passionate about auto engineering, anything car related.").

2729608, at *10 (E.D. Tex. June 13, 2014); *Manheim Automotive Financial Svcs., Inc. v. Hurst (In re Hurst)*, 337 B.R. 125, 133-134 (Bankr. N.D. Tex. 2005) ("The justifiable reliance standard imposes no duty to investigate unless the falsity of the representation is readily apparent or obvious or there are 'red flags' indicating such reliance is unwarranted."). Plaintiff contends that Mr. Hamza-Haris refused to let him see the Car, alleging that "towards the end of April [2017], [he] began asking to see the car...".[44] The evidence fails to prove this assertion. Thus, Plaintiff has failed to show that he justifiably relied on any explicit or implicit representations made by Mr. Hamza-Haris.[45]

Plaintiff further failed to produce evidence indicating that Ms. Haris made any misrepresentations to him.[46] Plaintiff argues that the Venmo and Cash App transfers to and from Ms. Haris's account indicate her participation in the scheme alleged by Plaintiff. The Court disagrees. Many of the transfers reflect language used in the text messages

---

[44] *See* Pl.'s Ex. 34 (First Am. Compl.), 6 ¶ 16; *see also* Pl.'s Ex. 36 (Brief in Support of Pl.'s Mot. Summ. J.), 7 ¶ 18.

[45] Plaintiff's pleadings failed to specify which statements or actions by Defendants were misrepresentations on which Plaintiff relied. It is not the "obligation" of the Court to "sift through evidence to find support for the litigant's position." *In re Murdock*, 337 B.R. 308, 313 (Bankr. N.D. Ohio 2005) (quoting *In re BAJ Corp.,* 42 B.R. 595, 597 (Bankr. D. Conn. 1984)). "Rather, it is the duty of the litigants to present their evidence in a manner which logically, systematically, and efficiently leads to the conclusion sought." *McGraw v. Allen (In re Bell & Beckwith)*, 64 B.R. 620, 630 (Bankr. N.D. Ohio 1986).

[46] Pl.'s Test. at 23:45 (Ms Kirk: "Did she do anything substantive [with the business]?" Mr. Poddar: "Not that I'm aware of because I never really dealt with her." Plaintiff subsequently testified that Ms. Haris was "very much involved in the business."). The Court notes that Plaintiff contradicts himself here, and he cannot both claim that he "never really dealt" with Ms. Haris *and* that she made misrepresentations, whether explicit or implicit, to him. The Court did not find these contrary assertions made by the Plaintiff as to Ms. Haris to be credible.

-12-

between Mr. Hamza-Haris and the Plaintiff.[47]  Ms. Haris represented that Mr. Hamza-Haris had access to both her Venmo and Cash App accounts, and was using them to transfer money to and from Plaintiff.[48]  The tone of the text messages provides context which reflects this assertion.  Thus, Plaintiff has failed to prove by a preponderance of the evidence that Ms. Haris made any representations, explicitly or implicitly, on which Plaintiff could have justifiably relied.

Based on the evidence presented and "the circumstances of the particular case," the Court finds that Plaintiff has not carried the necessary burden of proof to have the Car Debt excepted from discharge as a debt originating from false pretenses or false representation under 11 U.S.C. § 523(a)(2)(A).  *Field*, 516 U.S. at 70-71.  Thus, the validity of Plaintiff's cause of action under 11 U.S.C. § 523(a)(2)(A) rests upon sufficient proof that the alleged Car Debt was obtained by actual fraud.

To except a debt from discharge for actual fraud, a creditor must prove that: (1) the debtor made a representation; (2) the debtor knew that the representation was false at the time it was made; (3) the debtor made the representation with the intent and purpose to deceive the creditor; (4) the creditor relied on the representation; and (5) the creditor sustained a loss as the proximate result of its reliance on the representation.  *Selenberg v.*

---

[47] *See* Pl.'s Ex. 32.  Examples include: (1) Feb. 3, 2017 transfer from Ms. Haris to Mr. Poddar; (2) Mar. 21, 2017 transfer from Ms. Haris to Mr. Poddar; (3) Apr. 15, 2017 transfer from Ms. Haris to Mr. Poddar.

[48] App. in Support of Defs.' Resp. to Pl.'s Mot. Summ. J., Decl. Ashley Dawn Haris, 2 ¶ 3, ECF No. 41-1.

*Bates (Matter of Selenberg)*, 856 F.3d 393, 398 (5th Cir. 2017).

Defendant Hamza-Haris represented to the Plaintiff that he would fix the Car

"within a week."[49]  Plaintiff fails, however, to prove the second and third elements for

actual fraud by a preponderance of the evidence.  It is not clear by the evidence presented

that Mr. Hamza-Haris knew he was not going to make the promised repairs and

modifications at the time he made those representations.  "Statements concerning future

performance or promises could have been true at the time they were made, and the Court

should not consider the eventual performance or non-performance of those promises in its

analysis."  *Phelps v. Hunt (In re Hunt)*, 608 B.R. 477, 490 (Bankr. N.D. Tex. 2019)

(citing *Goldberg Sec., Inc. v. Scarlata (Matter of Scarlata)*, 979 F.2d 521, 525 (7th Cir.

1992)).  Mr. Hamza-Haris previously completed work for the Plaintiff with which he was

apparently pleased.[50]  It could be equally true that Mr. Hamza-Haris initially made his

promise of repair work intending to complete it without knowing it would later be false.

Furthermore, the evidence Plaintiff produced is insufficient to prove by a preponderance

that Mr. Hamza-Haris had an intent to deceive him by promising to perform repairs.

Thus, Plaintiff failed to prove nondischargeability based on actual fraud under 11 U.S.C.

§ 523(a)(2)(A).

---

[49] Pl.'s Ex. 22.

[50] Pl.'s Ex. 32 (Sept. 18, 2016 transfer from Mr. Poddar to Ms. Haris for "Hamza's amazing work.").

*Nondischargeability Under 11 U.S.C. § 523(a)(4)*

Debts created by "fraud or defalcation while acting in a fiduciary capacity,

embezzlement, or larceny" are excepted from discharge under 11 U.S.C. § 523(a)(4).  The

Plaintiff alleges that Defendants committed embezzlement or larceny when collecting

payment for repair and/or modification of the Car.[51]

"Embezzlement is defined for the purposes of § 523(a)(4) as the fraudulent

appropriation of property by a person to whom such property has been entrusted, or into

whose hands it has lawfully come."  *Miller v. J.D. Abrams Inc. (Matter of Miller)*, 156

F.3d 598, 602 (5th Cir. 1998).  Embezzlement and larceny differ in timing.  *Wright v.

Minardi (In re Minardi)*, 536 B.R. 171, 190 (Bankr. E.D. Tex. 2015).  While

embezzlement requires that the property in question be "lawfully" acquired at the outset,

larceny applies when a "debtor unlawfully appropriates property at the outset."  *Id*.

To prove that the Defendants committed embezzlement, the Plaintiff must show:

"(1) appropriation of funds by the debtor; (2) for the debtor's use or benefit; and (3) with

fraudulent intent."  *Boyle v. Berkenbile (In re Berkenbile)*, No. 12-41969, 2014 WL

797743, at *9 (Bankr. E.D. Tex. Feb. 27, 2014) (citing *Rainey v. Davenport (In re

Davenport)*, 353 B.R. 150, 200 (Bankr. S.D. Tex. 2006).  Fraudulent intent is an "intent to

deceive another person and thereby induce said person to transfer, alter, or terminate their

right with respect to property.  *Berkenbile*, 2014 WL 797743, at *8.  "It may be inferred

---

[51] Pl.'s Ex. 34 (First Am. Compl.), 9 ¶ 29.

from the conduct of the Debtor and from the circumstances of the situation." *Berkenbile*,

2014 WL 797743, at *9 (citing *Chizk v. Ramon (In re Ramon),* 433 B.R. 571, 582 (Bankr.

N.D. Tex. 2010)).

Plaintiff entrusted the Car to Mr. Hamza-Haris and made payments for parts,

repairs, and modifications so that Defendant Hamza-Haris lawfully possessed both

Plaintiff's money and his Car from the outset.[52]  When Plaintiff retrieved the Car, the

repairs and modifications had not been completed.  Thus, Defendant Hamza-Haris did not

use the Car or money for the reasons they were appropriated to him by the Plaintiff.

Finally, Plaintiff must show that the Defendants acted with fraudulent intent.

*Berkenbile*, 2014 WL 797743, at *8.  The Court finds that based upon the provided text

messages, the solicitation of payments from the Plaintiff, and the lack of progress on the

Car, Defendant Hamza-Haris exhibited fraudulent intent with respect to the payments

made to him by Plaintiff for repair work.[53]

The Court finds that the Car Debt should be excepted from discharge as to

Defendant Muhammad S. Hamza-Haris for embezzlement under 11 U.S.C. § 523(a)(4).

This finding under 11 U.S.C. § 523(a)(4) does not, however, apply to Defendant Ashley

---

[52] Defendants noted that Plaintiff's expert witness Mr. Siegel only examined the car
approximately a year after it had been returned to the Plaintiff, intimating that the damage shown in
Plaintiff's photographic evidence could have been caused by someone else.  Brief in Support of Defs.'
Resp. to Pl.'s Mot. Summ. J., 5 ¶ 10-12, ECF No. 41-2.  Defendants did not produce evidence or testify
to show that the Car had been appropriated for the use intended, and/or that the Car's condition changed
during that gap period.

[53] *See e.g.* Pl.'s Ex. 12; Pl.'s Ex. 13; Pl.'s Ex. 21; Pl.'s Ex. 27.

Haris.  Plaintiff failed to prove that Ms. Haris ever had or shared possession of the Car.

The tone and language accompanying the direct transfers corroborates Ms. Haris's

statement that Mr. Hamza-Haris utilized her payment app accounts to receive and transfer

money to the Plaintiff.[54]  Plaintiff did not prove which, if any, of these transfers she

personally conducted.  Furthermore, the Court did not find Plaintiff's contrary assertions

and testimony pertaining to Ms. Haris at trial to be credible.[55]  Plaintiff has failed to prove

by a preponderance of evidence that Defendant Ashley Haris participated in

embezzlement under 11 U.S.C. § 523(a)(4), and thus the Court's finding of embezzlement

applies only to Defendant Hamza-Haris.

The timing difference between embezzlement and larceny is such that a finding of

one logically precludes the finding of another for the same action(s).  Because the Court

finds that Defendant Hamza-Haris committed embezzlement under 11 U.S.C. § 523(a)(4),

Plaintiff's larceny claim is moot.

*Nondischargeability Under 11 U.S.C. § 523(a)(6)*

Debts arising "from willful and malicious injury by the debtor to another entity or

the property of another entity" are nondischargeable in bankruptcy.  11 U.S.C. §

523(a)(6).  For an injury to be "willful," it must be "a deliberate or intentional injury, not

merely a deliberate or intentional act that leads to injury."  *Kawaauhu v. Geiger*, 523 U.S.

---

[54] *See* App. in Support of Defs.' Resp. to Pl.'s Mot. Summ. J., Decl. Ashley Dawn Haris, 2 ¶ 3, ECF No. 41-1; *see also* Pl.'s Ex. 32.

[55] *See* Pl.'s Test. at 23:45.

-17-

57, 61-62 (1998).  Thus, reckless or negligent conduct by a debtor leading to an injury is

insufficient.  *Id*. at 64.  Injuries covered by this exception are not limited to physical

damage or destruction.  Harm to personal or property rights are also covered.  11 U.S.C. §

523(a)(6); *see Cowin v. Countrywide Home Loans, Inc. (Matter of Cowin)*, 864 F.3d 344,

349 (5th Cir. 2017).

    The 11 U.S.C. § 523(a)(6) exception for willful and malicious injury by a debtor

requires either: (1) objective substantial certainty of injury; or (2) subjective motive to

cause harm.  *See Miller v. J.D. Abrams Inc. (Matter of Miller)*, 156 F.3d 598, 606 (5th

Cir. 1998).  The objective standard is met when a court finds that a debtor intentionally

took action(s) that necessarily caused, or were substantially certain to cause the injury.

*Rainey v. Davenport (In re Davenport)*, 353 B.R. 150, 202 (Bankr. S.D. Tex. 2006).

Under the subjective test, a court must find that the debtor intended the actual injury that

resulted.  *Id*.  The objective standard recognizes "the evidentiary reality that defendants

rarely admit malicious intent."  *Yu v. Lau (In re Lau)*, No. 11-40284, 2013 WL 2476359,

at *7 (Bankr. E.D. Tex. May 28, 2013).  Thus, a court must analyze from a reasonable

person's perspective "whether the defendant's actions were substantially certain to cause

harm, [and] are such that the court ought to infer that the debtor's subjective intent was to

inflict a willful and malicious injury on the plaintiff."  *Boyle v. Berkenbile (In re

Berkenbile)*, No. 12-41969,  2014 WL 797743, at *9 (Bankr. E.D. Tex. Feb. 27, 2014)

(citing *Mann Bracken, LLP v. Powers (In re Powers)*, 421 B.R. 326, 334-35 (Bankr. W.D.

Tex. 2009)) (citing *Berry v. Vollbracht (In re Vollbracht)*, 276 Fed. App'x. 360, 361-62 (5th Cir. 2007)).

Plaintiff has demonstrated by a preponderance of evidence that Mr. Hamza-Haris charged Plaintiff for work which Mr. Hamza-Haris knew he had not completed.  This created an objective substantial certainty of harm to the Plaintiff.  In continuously charging and accepting payment from Plaintiff while knowing that the work Mr. Hamza-Haris had promised to do on the Car was incomplete, a reasonable person would find that his actions were likely to cause harm.  By not fixing the Car while knowingly accepting payment for services not rendered, his actions were substantially certain to cause harm to the Plaintiff, either by preventing Plaintiff's use of the Car or his ability to resell.  The Court finds that the 11 U.S.C. § 523(a)(6) dischargeability exception applies as to Defendant Muhammad S. Hamza-Haris.  Similar to his cause of action under 11 U.S.C. § 523(a)(4), Plaintiff failed to prove by a preponderance of the evidence that Ms. Haris either charged Plaintiff for work which she knew had not been completed, or that she performed or was hired to perform work on the Car.  Thus, the Court's finding of the 11 U.S.C. § 523(a)(6) exception from discharge applies only to Defendant Muhammad S. Hamza-Haris.

*Damages*

The Court finds the amount of relief requested by Plaintiff to be unsupported by the evidence.  The Court will not award damages which are not clearly related to the Car

after the Accident. Because the Plaintiff prevailed on his claims under 11 U.S.C. §§

523(a)(4) and (a)(6) as to Defendant Muhammad S. Hamza-Haris, the Court finds that

$30,430.22 represents the actual damages Plaintiff is owed, which are consequently

nondischargeable.

Plaintiff also contends he is entitled to $1,300.00 for Insurance Costs, $971.10 for

Impound Fees, and $2,425.54 for Storage Fees.[56] Because these damages were not pled

in the First Amended Complaint and were incurred after the Car was returned to the

Plaintiff, the Court finds that Plaintiff is not entitled to damages for any of these

expenses.

*Interest and Attorney's Fees*

"Prejudgment interest is governed by Texas law and the Plaintiff is entitled to the

rate specified in the contract. However, for post-judgment interest, the federal post-

judgment interest statute applies." *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 435

(5th Cir. 2003); 28 U.S.C. § 1961(a). "Prejudgment interest is compensation allowed by

law as additional damages for lost use of the money due as damages during the lapse of

time between the accrual of the claim and the date of judgment." *Johnson & Higgins of*

*Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 508 (Tex. 1998) (quoting *Cavnar v.*

*Quality Control Parking, Inc.*, 696 S.W.2d 549, 552 (Tex. 1985)). There are two legal

sources for an award of pre-judgment interest: (1) general principles of equity, and (2) an

---

[56] Pl.'s Ex. 31.

enabling statute. *Id.* Under Texas law, "an equitable award of prejudgment interest should be granted to [the] prevailing plaintiff in all but exceptional circumstances." *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 172 (5th Cir. 2010) (citing *Bituminious Cas. Corp. v. Vacuum Tanks, Inc.*, 75 F.3d 1048 (5th Cir. 1996)). While there is no applicable statute allowing pre-judgment interest here, the Court awards the Plaintiff pre-judgment interest on an equitable basis. *See Countrywide Home Loans, Inc. v. Cowin (In re Cowin)*, 492 B.R. 858, 904 (Bankr. S.D. Tex. 2013).

Under both Texas common law and statutory authority, pre-judgment interest as damages "begins to accrue on the earlier of 180 days after the date a defendant receives written notice of a claim or the date suit is filed." *In re Xerox Corp.*, 555 S.W.3d 518, 532 (Tex. 2018) (citing *Johnson & Higgins*, 962 S.W.2d at 531). Plaintiff's state court counsel sent a demand letter to the Defendants' former counsel, dated June 19, 2017.[57] Thus, pre-judgment interest began to accrue 180 days after on December 16, 2017. While Texas law does not permit the pre-judgment interest rate to fall below 5%, this "Court believes that the imposition of a 5% rate would be excessive." *Moser v. Bank of Tyler (In re Loggins)*, 513 B.R. 682, 715 n.104 (Bankr. E.D. Tex. 2014). Thus, the Court will instead award pre-judgment interest at the rate of 3%. *Id.*

---

[57] Pl.'s Ex. 28; Pl.'s Ex. 29. Plaintiff did not include the original demand letter from his state court counsel to Defendants' in either his trial exhibits or earlier pleadings. Rather, Ex. 29 is the July 12, 2017 response from Defendants' state court counsel to Plaintiff's demand letter. Defendants' state court counsel refers to the demand letter as dated June 19, 2017. The Court infers this date from this response letter. Ex. 28 is Plaintiff's state court counsel's reply to the response letter, dated August 14, 2017.

The Plaintiff seeks no less than $59,629.21 in attorney's fees and costs.[58] "As a general rule, a party seeking to recover attorneys' fees [under Texas law] carries the burden of proof. Although courts should consider several factors when awarding attorneys' fees, a short hand version of these considerations is that the trial court may award those fees that are "reasonable and necessary" for the prosecution of the suit." *Douglass v. Douglass (In re Douglass)*, No. 13-42079, 2015 WL 6446305, at *37 (Bankr. E.D. Tex. Oct 23, 2015) (quoting *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991)).

Neither Texas law nor the Bankruptcy Code allow for recovery of attorney's fees by creditors. Thus, Plaintiff can only recover attorney's fees if he is "allowed by another statute or contract." *Schwertner Backhoe Servs., Inc. v. Kirk (In re Kirk)*, 525 B.R. 325, 330 (Bankr. W.D. Tex. 2015) (footnote omitted). Because Plaintiff's state law and breach of contract claims are inapplicable to this proceeding, the only relevant potential claims are 11 U.S.C. §§§ 523(a)(2)(A), (a)(4), and (a)(6), none of which allow for recovery of attorney's fees. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Thus, Plaintiff is not entitled to either statutory or contract recovery of attorney's fees.

Furthermore, the American Rule is a "bedrock" principle of the adversarial system that dictates that "each litigant pay his own attorney fees, win or lose..." *Baker Botts L.L.P v. ASARCO LLC*, 576 U.S. 121, 126 (2015). Without the existence of a contract or

---

[58] Am. Supp. Decl. Jamie Kirk, 2 ¶ 4, ECF No. 58.

"explicit statutory authority," this Court will not deviate from that longstanding principle. *Id*. Accordingly, the Court finds that Plaintiff is not entitled to recover any attorney's fees, expenses, or costs.

The Plaintiff is entitled to recover post-judgment interest on the total judgment amount at the current federal post-judgment interest rate of 0.08%, which shall accrue from the date of judgment until paid. 28 U.S.C. § 1961.

## CONCLUSION

The Plaintiff shall recover from Defendant Muhammad Hamza-Haris, the principal sum of $30,430.22, plus pre-judgment interest from December 16, 2017 until September 17, 2021 [1,371 days] at a rate of 3.0% with a per diem of $2.50 and a total accrued amount of $3,427.50, for an aggregate award of $33,857.72, together with post-judgment interest upon such aggregate sums at the current federal post-judgment interest rate of 0.07%.

This indebtedness is declared to be nondischargeable pursuant to 11 U.S.C. §§ 523(a)(4) and (a)(6) as set forth herein above.

All other relief requested by the Plaintiff in the First Amended Complaint in the above-referenced adversary proceeding shall be **DENIED**. An appropriate judgment consistent with these findings and conclusions shall be entered by the Court.

Signed on 09/17/2021

THE HONORABLE JOSHUA P. SEARCY
UNITED STATES BANKRUPTCY JUDGE